## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMANDA WARD,

     Plaintiff,

v.                                 CASE NO: 8:10-CV-2640-T-17TGW

CASUAL RESTAURANT
CONCEPTS INC. d/b/a
APPELBEE'S,

     Defendant.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant's, CASUAL RESTAURANT

CONCEPTS INC. d/b/a APPLEBEE'S ("CRC"), Motion to Dismiss (Doc. 6) and Plaintiff's,

AMANDA WARD, response thereto (Doc. 8). For reasons set forward below, Defendant's

Motion to Dismiss is granted in part and denied in part. Count III of Plaintiff's complaint is

**GRANTED** with prejudice. Count VI is **GRANTED** with leave to amend. Counts II, IV, V, and

VII are **DENIED**. The following facts are taken as true for the purposes of resolving the motion.

## BACKGROUND AND PROCEDURAL HISTROY

Plaintiff began working for Defendant in December 2009 and was employed by

Defendant until April 2010. During this time, Chris Harrington, who was employed by

Defendant as manager and supervisor of the Plaintiff, made unrequited, amorous comments and

gestures toward the Plaintiff. Harrington, and other managers of this Applebee's, would routinely

use employee phones, without permission, to make survey calls.

When using Plaintiff's phone on April 6, 2010, Harrington forwarded a personal picture of the Plaintiff to his own phone, showed the photo to other employees and patrons, claimed to have an intimate relationship with the Plaintiff, and claimed that the photo was taken by Harrington.

Plaintiff discovered this, and reported Harrington's actions to the senior manager, who never investigated the matter, and took no corrective action in response to the incident.

Plaintiff was told that she should not work until Harrington was transferred on April 25, 2011, for an unrelated reason. However, Plaintiff quit because she was concerned as to who had heard the story and she did not want to work in a place that would condone such behavior.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint lay out "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v Gibson*, 355 U.S. 41, 47 (1957). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss, courts must follow a simple, two-pronged approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where

2

there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). In sum, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendant CRC seeks to dismiss Count II of the complaint for failing to exhaust all available administrative remedies and Counts III – VII for failing to meet the *Iqbal* pleading standard in regards to vicarious liability and the merits on each count.

For the reasons stated below, this Court finds that Plaintiff has sufficiently exhausted all appropriate administrative remedies, Plaintiff's complaint adequately meets the *Iqbal* standard in regards to its claims of vicarious liability on all counts; however, Plaintiff's complaint does not meet the *Iqbal* standard as to the merits of each claim presented. For these reasons, in regards to Count II, IV, V, and VII Defendant's Motion to Dismiss is DENIED, in regards to Count III the Motion is GRANTED without leave to amend and in regards to Count VI, defendant's Motion to Dismiss is GRANTED with leave to amend.

### A. Failure to Exhaust Administrative Remedies

The purpose behind the exhaustion requirement is to allow the Equal Employment Opportunity Commission (EEOC) or other administrative agencies the opportunity to investigate and perform their administrative roles of obtaining voluntary compliance and promoting conciliation between the parties before suit. *Gregory v. Georgia Dept. of Human Resources* 355 F.3d 1277, 1279 (11th Cir. 2004). Further, the "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

3

discrimination" and that the scope of an EEOC complaint should not be "strictly interpreted" because courts are reluctant to allow procedural hurdles to bar judicial claims. *Id* at 1280.

In *Gregory*, Dr. Gregory brought charges of race and gender discrimination, she prepared the EEOC form without aid from counsel, and she never checked the "retaliation box" on the EEOC form. *Id.* The court found that her claim for retaliation was not barred because the facts given by Dr. Gregory "could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination" under a liberal viewing of the administrative requirements. *Id.*

In the present case, Plaintiff presented her initial complaint without counsel and claims she was forced to quit after complaining about Harrington to management. It is reasonable from these facts to find that Plaintiff being forced to quit was in retaliation to her complaint and thus the EEOC charge could reasonable be extended to include that claim based on the facts provided to the EEOC. Thus, because the EEOC charge could reasonably be extended to include the charge of retaliation, despite the fact that the "retaliation" box was not checked on the EEOC form, the retaliation and discrimination claims are "inextricably entwined" and the retaliation claim would "grow out of the charge of discrimination" as it did in *Gregory*. Accordingly, this Court finds that Plaintiff's claims are not barred for failing to exhaust administrative remedies, and, thus, to Count II the Motion to Dismiss is DENIED.

## B. Vicarious Liability

Plaintiff claims that Defendant CRC is responsible for the intentional acts of Chris Harrington during his employment at CRC, and in order to survive a motion to dismiss as to Counts II – VII of the complaint, first the Plaintiff must plead facts that plausibly shows that

4

Defendant is responsible for Harrington's actions through vicarious liability, and then must plead facts that show it is plausible that Plaintiff will succeed on the merits for each of her claims.

Because the complaint must fail as to all relevant counts if vicarious liability is not plead sufficiently, this order will first determine whether a charge of vicarious liability can be supported by the pleading.

"Under the doctrine of respondent superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.,* 783 So.2d 353, 356 (Fla. 3d DCA 2001). "Under Florida law, an action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment." *Spencer v. Assurance Co. of Am.,* 39 F.3d 1146, 1150 (11th Cir.1994); *Iglesia Cristiana,* 783 So.2d at 357. Thus, the question here is similar to the question recently presented to the Eleventh Circuit in *United Technologies Corp. v. Mazer*; whether under this legal standard and the facts available to the Plaintiff, did the Plaintiff adequately allege that Harrington was acting within the scope of his employment. 556 F.3d 1260, 1271 (11th Cir. 2009).

Here, Harrington was a supervising manager at Applebee's during the time relevant to this complaint. Pl.'s Compl. ¶ 41 (Nov. 23, 2010). The purpose of a restaurant is to sell food and beverages, and it can reasonably be inferred that the kind of conduct expected from a supervising manager would be to supervise and manage employees and implement the policies of the company in performing that function. Plaintiff claims that one such policy is the prevention of employees using cell phones while working and the confiscation of employee cell phones to

5

effectuate this policy. *Id* at ¶ 3-4. Plaintiff further contends that while her cell phone was under the control of Harrington, Harrington used the phone to make survey calls and while doing so searched her phone, discovered the photos in question, and sent them to himself. *Id* at ¶ 17-23. This Court finds that these facts, taken as true, support the assertion that the activities in question were of the kind the employee was employed to perform.

Next, Plaintiff asserts that this action occurred during the time Plaintiff was working at Defendant's restaurant, during her shift, and during periods when Harrington was working for CRC. This Court finds that these facts support the assertion that the acts occurred within the time and space limits of Harrington's employment. Pl.'s Compl. ¶ 13, 19-23. Finally, Plaintiff alleges that the original reason for obtaining her phone was a company policy of CRC, and that the subsequent using and abusing her phone was a regular occurrence, was done to boost the store's ratings, and may be implied to be a policy of the company as well. These facts support the assertion that the activity in question was at least in part performed to serve the employment. *Id* at 16-18.

Thus, because the facts presented in this case meet all the elements necessary for vicarious liability, they show a plausible link between Harrington's conduct and the finding of vicarious liability for the Defendant, and, thus, the complaint adequately pleads to the *Iqbal* standard of factual plausibility of CRC's vicarious liability in this case.

## C. Intentional Infliction of Emotional Distress

"In order to state a cause of action for intentional infliction of emotional distress, the plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." *Johnson v.*

6

*Thigpen*, 788 So. 2d 410, 412 (Fla. 1st Dist. App. 2001). Yet, while the Florida state courts have allowed claims for intentional infliction of emotional distress, conduct which reaches the level of outrageousness that would justify such a claim have rarely, if ever, been found solely on verbal harassment or abuse. *Id* at 413. In fact, federal courts in Florida have usually required repeated verbal abuse and repeated physical contact to meet the burden of outrageous conduct sufficient to state a claim of intentional infliction of emotional distress. *Id* at 413-414. In the present case, no facts have been alleged of any physical contact, and further facts, while they may be inappropriate, hardly rise to the level of outrageous conduct which a claim of intentional infliction of emotional distress would require. Thus, because it is clear that no relief could be granted even should Plaintiff amend her Complaint, Defendant's Motion to Dismiss is GRANTED with prejudice.

### D. Invasion of Privacy

Florida has recognized three causes of action for invasion of privacy: (1) appropriation, (2) intrusion, and (3) public disclosure of private facts. *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Only two of the recognized causes of action are asserted in Plaintiff's Complain. The two invasion of privacy causes of action asserted by the plaintiff are intrusion of a "place" where "there is a reasonable expectation of privacy" and public disclosure of private facts. *Id.*

The first cause of action, intrusion, is the physical or electronic intruding into one's private quarters. *Id.* Plaintiff claims this occurred when Harrington took Plaintiff's phone and searched through its contents. Pl.'s Compl. ¶ 19-21, 49. The second cause of action, public disclosure of private facts, can be summarized into four elements, "1) the publication, 2) of private facts, 3) that are offensive and 4) are not of public concern." *Doe v. Univision TV Group,*

7

*Inc.*, 717 So. 2d 63, 64 (Fla. 3d Dist. App. 1998). Here, Harrington acquired Plaintiff's picture, the acquisition of the picture was offensive in nature, Plaintiff's picture was not a public concern and Harrington spread this picture among employees and patrons. Pl.'s Compl. ¶ 20-23, 52-55. Thus, on both intrusion and public disclosure of private facts, this Court finds that Plaintiff has sufficiently plead Counts IV and V for invasion of privacy and Defendant's Motion to Dismiss is DENIED as to the counts.

### E. Negligent Retention and Supervision

To state a claim as to negligent retention or supervision under Florida law the following elements must be found: "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; (3) proximate causation of injury by virtue of the breach." *Doe v. Mann*, 6:05CV259 ORL31DAB, 2007 WL 604981 (M.D. Fla. 2007). (See also *Roberson v. Duval County Sch. Bd.*, 618 So. 2d 360, 362 (Fla. 1st Dist. App. 1993), *Garcia v. Duffy*, 492 So. 2d 435, 439 (Fla. 2d Dist. App. 1986)). "In order to allege facts sufficient to show breach of the duty to exercise reasonable care in *retention* of an employee, the plaintiff must allege facts sufficient to show that once an employer received active or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action such as discharge or reassignment." *Garcia*, 492 So. 2d at 441.

As Harrington and Plaintiff were employees of Defendant, the existence of a relationship giving rise to a legal duty is not at issue here. Whether the Defendant had actual or constructive notice of problems with Harrington's fitness, whether it was unreasonable for the employer not to investigate or take corrective action if it had this notice, and whether Defendant's failure if it had notice and the lack of an investigation and subsequent action was the proximate cause of the Plaintiff's injury must be alleged to survive a motion to dismiss.

8

As to whether the Defendant had actual or constructive notice of Harrington's fitness, Plaintiff claims that the Head Manager had actual knowledge of previous instances of Harrington's behavior. Pl.'s Compl. ¶ 32. However, while it may be unreasonable for an employer not to investigate or take corrective action if the employer had this knowledge, there are no facts alleged to support that the Defendant did not investigate previously, or take corrective action. In fact, Plaintiff's own complaint states that Harrington was scheduled for reassignment previous to this incident taking place which may be a fact that corrective action was taking place in regards to prior incidents. *Id* at ¶ 32. Additionally, Defendant's failure to investigate or take corrective action in regards to Plaintiff's complaint of sexual harassment fails to meet this burden because this supposed breach could not be the proximate cause to the injury Plaintiff suffered, as the breach would have occurred after the actual injury.

This Court finds that Plaintiff has not pleaded facts sufficient to satisfy the *Iqbal* standard for a claim of negligent supervision or retention. There are no facts which support that Defendant failed to investigate or take remedial action for previous misconduct, nor can Defendant's failure to investigate Plaintiff's Complaint satisfy this burden as the lack of remedial action, if any, could not have been the proximate cause of Plaintiff's injury. As to Count VI, Defendant's Motion to Dismiss is GRANTED.

### F. Defamation

To survive a motion to dismiss, the elements of defamation, "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory" must be plead to the *Iqbal* standard. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

9

In the present case, Plaintiff pleads that Harrington sent the pictures to himself, other employees, and patrons, that Harrington claimed to be having sexual relations with Plaintiff, and that he took the photo of Plaintiff satisfying the publication requirement. Pl.'s Compl. ¶ 22-23. Plaintiff claims that Harrington's statements were false, his attentions were unrequited, and that he took the claimed photos from Plaintiff's phone which would satisfy the requirement of both falsity, that the actor had actual knowledge of the falsity of his claims, and that such claims were defamatory towards Plaintiff's character. *Id* at 14, 24, 65-66. Finally, Plaintiff claims that because of these statements, she was unable to work and suffered actual damages because of it.

Thus, because facts which support the elements of defamation are plead to satisfy the *Iqbal* standard, the Defendant's Motion to Dismiss is DENIED as to Count VII.

### G.  Federal Rule of Civil Procedure 15(a)(2)

Under Rule 15(a)(2) the court shall freely give leave to amend as justice requires. This Court finds that despite the complaint being deficient as regards to Count VI in the interest of justice Plaintiff is granted leave to amend the Complaint as to Count VI. However, based on the facts of this case "no amending" could rectify the complaint as to Count III, the Court does not grant leave to amend in regards to that count. Accordingly, it is:

**ORDERED** that Defendant's, CASUAL RESTAURANT CONCEPTS INC., Motion to Dismiss be granted in part and denied in part. Count III of Plaintiff's complaint is **GRANTED** with prejudice. Count VI is **GRANTED** with leave to amend. Counts II, IV, V, and VII are **DENIED**. The Plaintiff has fourteen days from this date to file an amended complaint as to Count VI, if she opts to amend.  Defendant shall answer the amended complaint, if any, within fourteen days of the filing of the amended complaint. If no amended complaint is filed within fourteen days of this date, Count VI is dismissed with prejudice and the Defendant shall answer the remaining counts of the initial complaint on or before August 8, 2011.

**DONE AND ORDERED** in Chambers at Tampa, Florida this 29th day of June, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record

11